**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| LAURA MCBRIDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-1424 |
| ) | |
| MCLEAN COUNTY, ) | |
| CARLA BARNES, McLean County ) | |
| Public Defender, sued in both individual and ) | |
| official capacities, BILL WASSON, ) | |
| County Administrator of McLean County ) | |
| sued in both individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION

This matter is now before the Court on a Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 17) filed by Defendants McLean County, McLean County Public Defender Carla Barnes ("Barnes"), and McLean County Administrator Bill Wasson ("Wasson") (referred to collectively as "Defendants"). For the reasons stated below, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff, Laura McBride ("Plaintiff"), is a licensed private investigator who began her employment with the McLean County Public Defender's Office in January 1997 and was eventually promoted to Criminal Defense Investigator, a position which she held from July 2005 to December 2017. (ECF No. 3 at 9). Plaintiff initially filed a Pro Se Complaint in this Court on November 21, 2018 (ECF No. 1) claiming violations of the First Amendment as well as a state law claim for the Illinois Whistleblowers Act against the Defendants. An Amended Complaint (ECF

1

No. 3) was filed on February 15, 2019. The Amended Complaint named the same Defendants as the Pro Se Complaint and claimed: (1) a First Amendment violation under 42 U.S.C. § 1983 against Barnes and Wasson; (2) a First Amendment conspiracy under 42 U.S.C. § 1983 against Barnes and Wasson; (3) a section 1983 *Monell* claim for violation of Plaintiff's First Amendment rights against all Defendants; and (4) a violation of the Illinois Whistleblower Act, 730 ILCS 174/20.1, against all Defendants. On May 3, 2019, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 17). This Opinion follows.

This action stems from the December 31, 2017 termination of Plaintiff's employment as a Criminal Defense Investigator in the Public Defender's Office through the McLean County Board's adoption of a new budget for the Fiscal Year 2018. Plaintiff contends that Barnes and Wasson made the decision to terminate Plaintiff by using the pretext of budgetary concerns after she spoke out on matters regarding the misuse of county funds, of how former Public Defender Kim Campbell ("Campbell") may have improperly aided the prosecution in the murder trial of *People v. David Boswell, Jr.;* 2010 CF 1117, and of how the current Public Defender, Defendant Barnes, failed to report Campbell's actions from that trial.

The pleaded facts surrounding Plaintiff's claims began in August 2011 when Plaintiff testified in a professional capacity in the *Boswell* trial. (ECF No. 3 at 12). Defendant Barnes was lead counsel for the defendant, and former Public Defender Campbell was her supervisor. (ECF No. 3 at 13, 15). After closing arguments, Campbell allegedly told Plaintiff that she had helped the Assistant State Attorney handling the prosecution write her closing argument. (ECF No. 3 at 14). The defendant was ultimately found guilty. (ECF No. 3 at 15). Plaintiff reported Campbell's

statement to Defendant Barnes, who noted that she had suspected that Campbell was assisting the prosecutors, but nonetheless declined to report Campbell. (ECF No. 3 at 15).

In April 2014, Plaintiff met with the Illinois Attorney General's Office because she became concerned that Campbell was improperly using public funds and resources (ECF No. 3 at 21). Plaintiff was told to report the conduct to Chief Judge Elizabeth Robb (ECF No. 3 at 21). On July 22, 2014, Plaintiff met with Chief Judge Robb and revealed her insight of Campbell's involvement with the *Boswell* trial and Defendant Barnes' knowledge of it. (ECF No. 3 at 24). Soon thereafter, Plaintiff also reported Campbell's conduct in the *Boswell* case, along with Defendant Barnes' knowledge of it, to the Bloomington Police Department and the Illinois State Police. (ECF No. 3 at 25). On or about September 30, 2014, Defendant Wasson met with Plaintiff to discuss what she knew of Campbell's conduct in both her "questionable use of public funds" and her "involvement in the *Boswell* case." (ECF No. 3 at 26). In that same month, Plaintiff signed an affidavit for the defense attorney handling Boswell's post-conviction proceedings regarding the murder trial and included in that affidavit that she reported the incident to Defendant Barnes. (ECF No. 3 at 28). On or about March 2016, *The Pantagraph,* a daily newspaper that serves the Bloomington-Normal, Illinois area, ran a story about the alleged misconduct in the *Boswell* trial and detailed the affidavit Plaintiff signed. (ECF No. 3 at 34). Defendant Barnes spoke to Plaintiff after the story was published and allegedly expressed concern that it might negatively impact her political future. (ECF No. 3 at 34). After that conversation, Plaintiff contends she began experiencing adverse employment actions including: 1) Defendant Barnes stopped speaking to Plaintiff both in and out of the office; 2) Defendant Barnes stopped inviting Plaintiff to attend meetings and seminars that she previously would have attended as part of her employment duties; 3) Defendant Barnes changed Plaintiff's job duties and informed her she would no longer conduct investigations in the

field or serve subpoenas; 4) Defendant Barnes began taking away Plaintiff's cases and reassigning them, and 5) after taking away cases from Plaintiff, Defendant Barnes then informed other employees in the office that Plaintiff's numbers were low. (ECF No. 3 at 35). Plaintiff began to worry that her job was in jeopardy. (ECF No. 3 at 36). Plaintiff also signed a second affidavit dated August 31, 2017 regarding the murder trial, and shortly thereafter, Defendant Barnes allegedly told Plaintiff that she was unhappy Plaintiff was spending so much time assisting Boswell's new criminal defense lawyer. (ECF No. 3 at 30, 31).

In September 2017, Defendant Wasson began to express concerns over the budget for the Fiscal Year 2018 due to the recent passing of the budget by the Illinois General Assembly and the State of Illinois. (ECF No. 17 at 2-3; 17-1 at 1-2). As a result, Defendant Wasson and the McLean County Board members explored methods to scale down expenses, including reductions in the workforce. (ECF No. 17-1 at 1-6). Defendant Wasson was directed by the Board to work with department heads across the county to evaluate staffing levels. (ECF No. 17 at 2; 17-1 at 1-2). While evaluating full-time staffing levels at the Public Defender's Office, Defendant Barnes recommended to Defendant Wasson that Plaintiff's position be included in the workforce reduction. (ECF No. 17 at 2). On November 21, 2017, the Board adopted the budget for the Fiscal Year 2018, which eliminated several positions, including Plaintiff's position. (ECF No. 3 at 40). Plaintiff claims that thereafter another individual with less experience was offered a contract investigator position. (ECF No. 3 at 42).

**STANDARD OF REVIEW**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a

claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Id.*

Moreover, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider extrinsic evidence. *See* FED. R. CIV. P. 12(b)(6). If a court considers matters outside of the pleadings, "the motion must be treated as one for summary judgment." FED. R. CIV. P. 12 (12)(d). However, a court may "take judicial notice of matters of public record," *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991), and it may do so without converting a motion to dismiss into one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012)*; Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Henson v. CSC Credit Servs*. 29 F.3d 280, 284 (7th Cir. 1994). This exception has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard. *Gen. Elec. Capital Corp.* 128 F.3d at 1081. Here, Defendants have introduced minutes and agendas from the McLean County Board meetings, ordinances from

the McLean County Code, and the McClean County budget worksheets for Fiscal Year 2018, as an Exhibit (ECF No. 17-1) to their Motion to Dismiss. Given these are documents that are part of public record, the Court will take judicial notice and consider them without converting the present motion to a motion for summary judgment.

## ANALYSIS

I. **Legislative Immunity**

   a. **Count I – First Amendment Violation Under 42 U.S.C. § 1983**

In Count I of Plaintiff's Amended Complaint, Plaintiff claims that Defendants Barnes and Wasson violated her First Amendment rights under 42 U.S.C. § 1983 by retaliating against her for exercising her "First Amendment right to speak out on matters of public concern when she raised issues of misuse of county funds, of how the former Public Defender Kim Campbell may have improperly aided the prosecution in the *Boswell* trial, and of how the current Public Defender Defendant Barnes failed to report Campbell's actions." (ECF No. 3 at 45). Plaintiff alleges that as a result of speaking out on those matters, Defendants Barnes and Wasson terminated Plaintiff's employment as an investigator in the Public Defender's Office and guised it as a budget cut.

In arguing that this Court should dismiss Count I of Plaintiff's Amended Complaint, Defendants Barnes and Wasson claim that they are entitled to absolute legislative immunity. Legislative immunity is confined to legislative conduct within the traditional sphere of legislative activity. *See Supreme Court of Virginia v. Consumers Union of U. S., Inc*., 446 U.S. 719, 731 (1980). Accordingly, in order to effectively claim absolute legislative immunity, this Court must look at whether the actions undertaken by Barnes and Wasson qualify as legitimate legislative activity and whether they were acting in their legislative capacity as government officials as

opposed to enacting administrative or executive acts. *See Rateree v. Rockett*, 852 F.2d 946, 949 (7th Cir. 1988).

Determining whether an action is legislative depends "on the nature of the act, rather than on the motive or intent of the official performing it." *Bagley v. Blagojevich*, 646 F.3d 378, 391 (7th Cir. 2011). While the Seventh Circuit has generally agreed that employment decisions are ordinarily administrative, "employment decisions are not administrative when accomplished through traditional legislative functions." *Rateree*, 852 F.2d at 950. Specifically, in *Rateree*, the Seventh Circuit held that a budgetary decision to eliminate a position was a legislative action as it eliminated the employee's position and another person was not hired to replace the employee. *Id.* Similarly, in *Benedix v. Village of Hanover Park*, *IL*, 677 F.3d 317 (7th Cir. 2012), the Seventh Circuit found that an ordinance abolishing a position and thus terminating an employee who held that position was a legislative action entitled to legislative immunity. *Benedix*, 677 F.3d at 318. The Seventh Circuit held that the ordinance was a legislative action as it was "adopted through the legislative process, and [had] the force of law." *Id.*

In *Bagley,* the Seventh Circuit went further by examining if the termination of a position through a legislative act was, in actuality, a targeted attack on a certain individual as opposed to a prospective reorganization. *See Bagley*, 646 F.3d at 393. The court considered many cases that "support[ed] the distinction between the firing of an employee," which is administrative, "and the elimination of a position," which is legislative. *Id.*; *see Bogan v. Scott-Harris,* 523 U.S. 44, 56 (1998) (noting that the ordinance "involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office"); *Canary v. Osborn*, 211 F.3d 324, 330–31 (6th Cir. 2000) (school board members terminated assistant principal after he publicly commented on a suspected

7

cheating scheme involving student achievement tests). While the terminated employees in the *Bagley* case alleged that a nearly identical position was created, the court held that the governor defendant's actions were substantively legislative because "this was not a one-for-one replacement of disfavored employees with more favored individuals to do the same work. Some responsibilities overlapped and … performed duties [that were] similar … but not to a degree that the reorganization was not prospective." *Bagley*, 646 F.3d at 395.

Here, the Court has determined that the facts alleged in the Amended Complaint reflect that the contract investigator's position was not a "one-for-one replacement" and that the termination of Plaintiff's employment was a legitimate legislative activity. *Bagley*, 646 F.3d at 395; *Weiler v. Vill. of Oak Lawn,* 86 F. Supp. 3d 874, 883 (N.D. Ill. 2015) (court held that village manager was entitled to legislative immunity on a § 1983 claim where an employee's job was terminated by the passage of an ordinance and a contract employee took over because the act represented a "structural reorganization with prospective implications" as the village manager anticipated the use of the contract employee would save the village money).

Similar to *Weiler,* the elimination of Plaintiff's position and its replacement with a contracted position represents a structural reorganization. Defendant Wasson and the members of the McLean County Board contemplated the reduction of McLean County's workforce in order to address budgetary concerns. A review of the Board minutes from September 11, 2017, along with the ordinances from September 19, 2017, reflects that the Board was experiencing budget challenges, and as a result, cutbacks in the workforce were necessary. (ECF No. 17-1 at 1-2). These contemplations included the "elimination of merit and across the board to try to balance the budget" and a "reduction in the force." (ECF No. 17-1 at 2). Accordingly, the Board agreed that department heads would work with Defendant Wasson to find savings in their respective

8

departments, which could include the termination of certain employees. (ECF No. 17-1 at 2, 24). The meeting minutes clearly demonstrate that the reductions applied to a broad group of employees across several departments in McLean County rather than a targeted attack on a certain individual such as Plaintiff. *See Benedix*, 677 F.3d at 318; *see also Bagley*, 646 F.3d at 395–96. Moreover, the new contract investigator was also not identical to Plaintiff as this individual had less experience and was not a full-time staffer as Plaintiff was. *See generally Weiler,* 86 F. Supp. 3d at 883.

Overall, like in *Benedix* and *Rateree,* Defendant Wasson's actions to address the budgetary concerns, which included a reduction in the workforce, led to a decision enforced by the McLean County Board that amounted to legislative action and had the force of law. Accordingly, the removal of Plaintiff's position was a legislative action rather than an administrative one, and Defendant Wasson is entitled to legislative immunity.

However, as to Defendant Barnes, the doctrine of legislative immunity does not apply. Only particular state officials have been held to be protected by legislative immunity and while the Seventh Circuit has stated that an official does not have to be a "legislator" to be shielded by legislative immunity, they do need to engage within the sphere of a legitimate legislative activity. *See Weiler* 86 F. Supp. at 881. According to the facts alleged, Defendant Barnes was not a participant in the legislative activity. Unlike Defendant Wasson, Barnes was absent from the Board meetings that discussed the budgetary concerns and did not recommend or introduce the new budget. Both parties concede that Plaintiff's position was eliminated following a public discussion of the McLean County Board regarding budgetary concerns and the vote adopting the budget – neither activity to which Defendant Barnes partook. Although Defendant Wasson also did not vote, he was involved in the budgetary process.

Moreover, this Court agrees with Plaintiff that none of the actions Defendant Barnes undertook were legislative in nature and accordingly she is not afforded legislative immunity. Here, Plaintiff has plausibly alleged a prima facie case for First Amendment retaliation as to Defendant Barnes in her Amended Complaint.

Generally, First Amendment protection of lawsuits by public officials is limited to lawsuits in which the official "is speaking 'as a citizen on a matter of public concern.'" *Hagan v. Quinn*, 84 F.Supp.3d 826, 830 (C.D.Ill. 2015). Additionally, a plaintiff must allege that: (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity or speech was at least a motivating factor for the deprivation. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). In the case at bar, Defendants do not argue that Plaintiff was not speaking as a citizen. Plaintiff clearly was acting as a citizen and not pursuant to her official Criminal Defense Investigator duties when she reported her concerns. Furthermore, Plaintiff's allegations support a finding that the matters she was speaking out on were of a public concern; they were reported to the Attorney General's office, Chief Judge Robb, and the local police, and *The Pantagraph* published a story about it. "The public concern element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance." *Hagan*, 84 F.Supp. at 830. Plaintiff also plausibly alleges that she suffered a deprivation that was likely to deter First Amendment speech. After Plaintiff spoke out, Defendant Barnes changed Plaintiff's job duties, informed her she would no longer conduct investigations in the field or serve subpoenas, began taking away Plaintiff's cases and reassigning them, and after taking away cases from Plaintiff, Defendant Barnes informed other employees in the office that Plaintiff's numbers were low. Plaintiff stated she began to fear her job was in jeopardy. The First

Amendment does not provide citizens the right to be employed; however, if employees are not likely to exercise their First Amendment right to speak because they think they will be terminated in retaliation for speaking, then protected speech of the employees is "likely deter[red]." *Woodruff,* 542 F.3d at 551. Lastly, Plaintiff plausibly alleged a causal link between her protected speech and the retaliatory deprivation. In the Amended Complaint, Plaintiff pled that after *The Pantagraph* published the story about the alleged misconduct in the *Boswell* trial, Defendant Barnes spoke to Plaintiff about the matter and was concerned it would negatively impact her political future. It was after this meeting that Plaintiff claims she experienced the adverse employment actions by Defendant Barnes. Therefore, Plaintiff has sufficiently pled a causal link sufficient to survive a motion to dismiss.

Accordingly, this Court dismisses Count I against Defendant Wasson and declines to dismiss Count I against Defendant Barnes.

### b. Count II – First Amendment Conspiracy Under 42 U.S.C. § 1983

Plaintiff also claims that Defendants Barnes and Wasson acted in concert to violate her First Amendment rights under 42 U.S.C. § 1983. To state a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988), cert. denied, 486 U.S. 1043 (1988).

Plaintiff fails to support a claim for conspiracy. Plaintiff contends that Defendants Barnes and Wasson violated her First Amendment rights by "removing duties from Plaintiff and reassigning cases, formulating the pretext of a budgetary cause for Plaintiff's termination, and terminating her employment…" (ECF No. 3 at 60). However, according to the repeated

allegations, it was only Defendant Barnes who removed duties from Plaintiff and reassigned cases. As pled, Plaintiff does not meet the elements to show that Barnes and Wasson had an agreement, express or implied, with each other to specifically terminate Plaintiff because she was speaking out on matters of public concern. Moreover, as discussed at length above, Defendant Wasson is afforded legislative immunity because his actions that led to the termination of Plaintiff's position were part of a legitimate legislative activity.

Thus, Plaintiff has no claim of First Amendment conspiracy under 42 U.S.C. § 1983 against Defendants Barnes and Wasson, and Count II of Plaintiff's Amended Complaint is dismissed.

## II. *Monell* Liability

In Count III, Plaintiff alleges a *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) claim against all Defendants. In her Amended Complaint, Plaintiff states that Defendants Barnes and Wasson were the "final decision makers for the Defendant County" and that Defendants Barnes and Wasson's actions reflected "a policy, custom or pattern of official conduct of engaging in and condoning retaliation against individuals who engage in protected speech." (ECF No. 3 at 77, 78). However, in Plaintiff's response to Defendants' Motion to Dismiss, she states that she is *not* alleging *Monell* liability based upon a "policy, custom, or practice." (ECF No. 20 at 9). Therefore, this Court will assume that Plaintiff intends to proceed with her *Monell* claim based solely under the theory that Defendants Barnes and Wasson were "final decision makers."

To prevail on a claim under *Monell*, a plaintiff must show that a municipal employee's unconstitutional act was caused by: "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (citation omitted); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Here, Plaintiff is alleging that the third branch of a *Monell* claim related to final policymaking authority applies.

An allegation that an individual defendant is "the decisionmaker on hiring/firing decisions…does not necessarily make him the policymaker on those issues." *Id.* Rather, "to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 400-01 (7th Cir. 1992)). To determine whether an individual is a final policymaker, courts review "the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Where a plaintiff brings a *Monell* claim against a municipality based upon the specific conduct of a municipality employee, the plaintiff cannot prevail on that *Monell* claim without first showing that the employee violated the plaintiff's constitutional rights. *Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014). Since Plaintiff fails to allege a First Amendment claim against Defendant Wasson, she also fails to state a corollary *Monell* claim against him.

Additionally, as alleged, Defendant Barnes is not responsible for making law or setting policy that has the effect of adopting rules. Specifically, she did not set the policy related to the reduction in the workforce that formed part of the budget for the Fiscal Year 2018, nor did she take part in the ordinance that amended section 84 of Chapter 108 of the McLean County Code

titled "Reduction In Work Force." While Defendant Barnes may be responsible for hiring and firing employees, that does not make her the final policymaker on those issues.

"It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once." *Valentino v. Village of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). While the First Amendment retaliatory allegations against Defendant Barnes have been sufficiently pled, they do not bring Defendant McLean County within reach. *See Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992) ("[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy.")

Thus, this Court dismisses Count III against all of the Defendants.

### III. The Tort Immunity Act

Finally, in Count IV, Plaintiff alleges that the Defendants are in violation of the Illinois Whistleblower Act ("Whistleblower Act") by terminating her position in retaliation for disclosing the wrongdoing she believed was occurring in the McLean County Public Defender's Office. In response, the Defendants contend that Plaintiff's Whistleblower Act claim is barred by several provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), which immunizes municipalities and its employees from liability for the performance of acts that are discretionary and involve policy determinations.

The Tort Immunity Act states in pertinent part:

> Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

14

745 ILCS 10/2-201; *see also* 745 ILCS 10/2-205. Illinois courts have determined that this provision, when analyzed in conjunction with immunity for government entities under 745 ILCS 10/2–109, also immunizes municipalities for officials' discretionary policy decisions. *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 186 (2007) ("[S]ection [2–201], together with section 2–109 (745 ILCS 10/2–109) ('a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable')), provides both public employees and the public employer with immunity against allegations that challenge discretionary policy determinations."). Additionally, "an employee may be granted immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion." *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (1981) (emphasis added). However, "immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy and in exercising discretion." *Id*. To determine whether the Tort Immunity Act applies in this case, the Court must examine whether Plaintiff has pled that the Defendants discharged her in a manner involving a determination of policy and an exercise of discretion. *Id*. Policy determinations are those acts that require the balancing of competing interests to make a judgment as to what solution will best serve those interests. *Id.*

In the case at bar, Defendant Wasson was required to make decisions to address the new issues that arose following the passage of a recent budget by the Illinois General Assembly and the State of Illinois. To address those budgetary concerns, Defendant Wasson presented several ideas at the McLean County Board meeting including voluntary retirement incentives, the elimination of merit, and reductions in the workforce to try to balance the budget. (ECF No. 17-1 at 1-6). In effect, these were policy determinations.

Moreover, discretionary acts are unique to a particular public office and involve the exercise of judgment. *Corning v. East Oakland Tp.*, 670 N.E.2d 350, 352 (1996). In particular, decisions of hiring and firing are discretionary acts barred under Section 2–201 of the Tort Immunity Act. *See Johnson v. Mers*, 664 N.E.2d 668, 675 (1996) (defining discretionary acts as those "not performed on a given state of facts in a prescribed manner," and in particular describing hiring as a discretionary act). Likewise, the decision to fire someone involves balancing a set of given circumstances to arrive at an appropriate outcome; the outcome is not predetermined but left in the hands of an official to use proper judgment. *See Zinnermon v. City of Chicago Dept. of Police*, 209 F.Supp.2d 908, 911 (N.D.Ill. 2002).

Here, Defendant Wasson had to balance the decision of reducing the workforce against the imminent budgetary issues. The policy determinations made by Defendant Wasson were left in the hands of the McLean County Board members to finalize the budget that was voted on and adopted on November 21, 2017. Accordingly, the act of suggesting a reduction in the workforce, which ultimately led to an adoption of the budget for Fiscal Year 2018 that eliminated Plaintiff's position, was a discretionary decision. Therefore, Defendant Wasson is immune. Because employee actions are immune from suit for such discretionary policy decisions, a local public entity is also immune from suit under the Tort Immunity Act where the tort in question flows from the employee. 745 ILCS 10/2–109. As such, Defendant McLean County is also immune.

However, accepting Plaintiff's allegations as true, Defendant Barnes was not balancing competing interests when she allegedly retaliated against Plaintiff for speaking out on matters of public concern by limiting Plaintiff's job duties and conveniently recommending to Defendant Wasson that Plaintiff's position be included in the workforce reduction shortly after she discovered Plaintiff provided a second affidavit in Boswell's post-conviction hearings. (ECF No. 3 at 30, 35,

85; ECF No. 17 at 12). The provision of the Whistleblower Act alleged by Plaintiff prohibits employers from retaliating against an employee "because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. In this case, Plaintiff disclosed information she allegedly believed to be illegal to the Attorney General's office, Chief Judge Robb, and the local police. The Seventh Circuit has held that an employer who fired an employee after she exposed corrupt practices was not immune from retaliatory discharge under the Tort Immunity Act, because the employer failed to establish that he had made a policy decision. *See generally Valentino,* 575 F.3d at 679. Here, Defendant Barnes has failed to establish the she made a policy decision that resulted in a discretionary determination to eliminate Plaintiff's position.

Accordingly, this Court dismisses Count IV against Defendants Wasson and McLean County and declines to dismiss Count IV against Defendant Barnes.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss [17] is GRANTED IN PART and DENIED IN PART. Plaintiff may proceed on Counts I and IV against Defendant Barnes only. Counts I, II, III and IV against Defendant Wasson, and Counts III and IV against Defendant McLean County are dismissed without prejudice. Defendants Wasson and McLean County are DISMISSED from this case.

ENTERED this 24th day of June, 2019.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge